UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ROBERT LEROY McCOY                    CIVIL ACTION NO. 09-cv-2146

VERSUS                                JUDGE HICKS

CHIEF BLOSSOM, ET AL                  MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Robert Leroy McCoy ("Plaintiff") became a suspect in the murders of the parents and 17-year-old son of his estranged wife. He was arrested in Idaho. A jail log states that Plaintiff attempted to commit suicide in his Idaho cell by using a bed sheet to hang himself. Deputies and medical professionals were able to revive Plaintiff, and he was extradited to Bossier Parish, where he was housed at the Bossier Parish Maximum Security Jail from May 2008 until January 2012. Plaintiff was then transferred to death row at Angola pursuant to the death sentence imposed after he was convicted of the three murders.

Plaintiff filed an earlier lawsuit, McCoy v. Stokes, 08-cv-1918 (W.D. La.), against (then) Bossier Parish Sheriff Larry Deen and several of his deputies. Plaintiff alleged that he was subjected to various forms of excessive force, that his medical care was not appropriate, and that he was generally mistreated. This court granted summary judgment. Plaintiff appealed, and the Fifth Circuit dismissed the appeal as frivolous.

At the same time summary judgment briefing was being completed in the 2008 case, Plaintiff filed this civil action against Sheriff Deen and the deputies named in the 2008 case, plus six additional deputies. The complaint generally concerns the same alleged incidents of force and lack of medical care as set forth in the 2008 complaint. Before the court is a Motion for Summary Judgment (Doc. 78) filed by the Defendants that raises a number of defenses, including issue and claim preclusion based on the prior judgment. For the reasons that follow, it is recommended that the motion be granted and this action be dismissed with prejudice.

**Issue and Claim Preclusion**

**A. General Principles**

The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as res judicata. Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 121 S.Ct. 1808 (2001). Issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a court determination that was essential to the prior judgment, even if the issue recurs in the context of a different claim. Taylor v. Sturgell, 128 S.Ct. 2161, 2171 (2008). These doctrines preclude parties from contesting matters once they have had a full and fair opportunity to litigate them, and they protect against the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by avoiding the possibility of inconsistent decisions. Id.

**B. Sua Sponte Invocation**

Defendants expressly raise the res judicata defense with respect to Plaintiff's claims stemming from a June 13, 2008 shower incident, but the court finds that the doctrine has greater breadth and applies to all of the claims asserted in this civil action. Res judicata is generally an affirmative defense that must be pleaded by a defendant, and not raised by the court sua sponte, but there is an exception for when the two actions were brought before the same court. LaCroix v. Marshall County, 409 Fed. Appx. 794, 798 (5th Cir. 2011). Dismissal by the court sua sponte on res judicata grounds is permissible in that setting in the interest of judicial economy. Boone v. Kurtz, 617 F.2d 435 (5th Cir. 1980). Sua sponte invocation of the defense to the full extent of the complaint will well serve the interest of judicial economy and will avoid additional burdens on the defendants and the state prison system that would be required to transport a death row inmate from Angola to Shreveport for a jury trial to resolve the claims of an abusive litigator.

**The 2008 Civil Action**

Plaintiff alleged in his 2008 complaint that on June 8, 2008 he was taken from the Bossier jail to the hospital at LSU-HSC for what Plaintiff described as a bleeding ulcer. He claimed that his jailers told the hospital that they believed he had swallowed razor blades, but an examination with a camera inserted in the stomach and colon proved this was wrong. In the summary judgment contest, Warden Stokes testified that Plaintiff did attempt suicide by cutting both of his arms and then ingesting the jagged, broken plastic cover to a disposable razor. Plaintiff was found in his observation cell in a large amount of blood and feces, taken

to the hospital, and treated for his blood loss until his discharge four days later. Photographs depicted the plastic razor cover and a bloody mess of a cell. Plaintiff's claims related to this incident were dismissed on summary judgment.

Plaintiff also alleged that on June 13, 2008, he was in the shower area when he was subjected to an episode of excessive force. He claimed that Warden Stokes and some of his deputies entered the shower area, called Plaintiff derogatory names, spit in his face, and otherwise tried to provoke Plaintiff. Deputy Talley, while escorting Plaintiff, allegedly tried to pull Plaintiff into the shower area where there were no cameras, but Talley slipped and pulled Plaintiff on top of him. Plaintiff alleged that deputies in the area then handcuffed him while Deputy Talley repeatedly punched Plaintiff in the face and Deputy Parker used a Taser device on Plaintiff's leg. Plaintiff alleged he was left in a holding cell with mace on his face and naked body, and nurse David Gorman saw him but left him in that condition.

Defendants responded with summary judgment testimony that showed it was Plaintiff who was the aggressor in the situation and that their use of force was necessary to restrain Plaintiff. There was also testimony that nurse Gorman was present during the altercation, immediately assessed Plaintiff afterwards, and reassessed Plaintiff in the infirmary within 30 minutes after the incident. He found no injuries to Plaintiff. The court granted summary judgment on claims related to the incident.

Plaintiff also alleged in his 2008 suit that his leg began to swell after the shower incident. Nurse Gorman examined the leg and called for an EMT to check it. Plaintiff alleged that, within a couple of hours, the leg was three times the size of his other leg. Nurse

Gorman was called again, and he immediately told deputies to transport Plaintiff to the hospital. Plaintiff claimed that he had a blood clot from his waist area to the bottom of his thigh, as well as a clot behind his knee and another by his ankle. The court granted summary judgment with respect to this claim because nurse Gorman was not a named defendant and, by Plaintiff's own allegations, Gorman acted promptly and reasonably in response to the medical condition.

Plaintiff also alleged that, after his return from the hospital for the blood clot matter, he was placed in a holding cell with a cloth gown and harassed by guards. He claimed that a guard sprayed him with mace as he slept on the floor, and the mace stayed on him for two days and swelled his eyes. Plaintiff was eventually taken to the hospital, but he claims the deputies threatened that he should tell the doctor he had an allergic reaction to his blood thinner medication. This claim was dismissed on summary judgment based on medical records and other summary judgment evidence, as well as for failure of Plaintiff to identify a particular defendant at fault for the allegations.

Plaintiff alleged throughout his 2008 complaint that the claims of three suicide attempts by him were false. One of those allegedly false claims concerned a July 28, 2008 incident. Affidavits and medical evidence indicated that, on that occasion, Plaintiff bit a large area out of his right arm. The medical reports stated: "Patient tried to gnaw off his arm." Plaintiff was taken to the hospital for surgical repair and treatment. Plaintiff alleged that his wounds were actually caused by the application of a Taser and the yanking out of one

of the prongs that tore a blood vessel in his arm. Summary judgment was also granted on this claim.

**The Current (2009) Civil Action**

A review of Plaintiff's multiple filings in this 2009 civil action shows that it concerns the same central events, with some added details and incidents, as were the subject of the 2008 complaint. Plaintiff begins with his claim that he did not attempt suicide in Idaho. Rather, he says, jail personnel there applied a choke hold to him and invented the suicide attempt after Plaintiff was revived at a hospital.

Plaintiff goes on to complain, with respect to his arrival in Bossier Parish, that he was held in a "rubber room," attacked in the shower on June 13, 2008, suffered gastro-intestinal bleeding on June 8, 2008 as a result of an earlier infliction of excessive force, was kept in a padded cell naked after the alleged suicide attempt involving the razor cover, and was generally attacked and denied medical attention on a regular basis in 2008. Plaintiff complains of the cool temperatures in his cell, a lack of toiletries (which officials ascribe to Plaintiff's sickening himself by ingesting large amounts of toilet paper), denial of access to legal documents and resources, and being prohibited from talking while held in segregation. Plaintiff adds to his denial of the third suicide attempt by explaining that he was first bitten by a spider, jail officials allowed the wound to get infected, nurse Gorman removed flesh from the area, a Taser was applied, and the removal of the prong ripped a vein in the area Gorman had treated. Plaintiff alleges that the jail officials fabricated the suicide attempt to cover up for their incompetence.

**Analysis**

"Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." Petro-Hunt, LLC v. U.S., 365 F.3d 385, 395 (5th Cir. 2004), quoting In re: Southmark Corp, 163 F.3d 925, 934 (5th Cir. 1999). The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. Petro-Hunt, 365 F.3d at 395.

The first element is whether the parties are identical or in privity. Plaintiff is obviously the same in both cases. On the other side of the case, the defendants in the 2008 case were Sheriff Deen, Warden Stokes, Deputies Parker and Talley, and the sheriff's office. The same defendants were named in this action, together with defendants Grey, Bloxom, Porter, Gorman, Toloso, and Townley. Each of the new defendants is also a deputy or other official at the jail. The main allegations against the new defendants are their presence during the various incidents outlined in the two complaints and their alleged failures to intervene on Plaintiff's behalf.

Defendants who are members of the same government agency are generally treated as being in privity for purposes of being able to assert a res judicata defense. See Boone, 617 F.2d at 436 (res judicata dismissal of second suit that added IRS commissioner as defendant affirmed because there was "privity between officers of the same government" so that judgment in favor of IRS agents in first suit barred relitigation) and Benbow v. Wall, 2014

WL 652354 (D. R.I. 2014) (dismissing prisoner's second suit based on res judicata despite addition of new correctional officer defendant who was employed by same agency as original defendants).

Furthermore, special circumstances are required to bind a nonparty plaintiff to a judgment, but nonparty defendants (such as the new deputy defendants) may enjoy the benefits of a favorable judgment even if they would not have been bound by a judgment in the case. If preclusion is asserted against a person (Plaintiff) who properly may be bound by the judgment, "the inquiry shifts to ask whether there is some special reason for denying its benefits to a nonparty." 18A Wright & Miller, Federal Practice and Procedure, § 4448 at 327-28 (2d ed. 2002). Denial may be appropriate when the first litigation did not afford the plaintiff a "full and fair opportunity" to try the issue offered for preclusion. Id.

Plaintiff had a full and fair opportunity to assert his claims against these defendants, all from the same small law enforcement agency, in the 2008 civil action, and Plaintiff's numerous filings in that case demonstrate that he was fully capable of asserting any and all claims arising out of the incidents at issue. There are no special circumstances that would warrant denying the benefit of claim preclusion to the new defendants. One of the aims of res judicata is to avoid the inefficiencies of the splitting of claims and serial litigation regarding the same incidents. Its application here will well serve those aims.

Turning to the other elements, there is no question that the judgment in the 2008 action was rendered by a court of competent jurisdiction and is now final and on the merits. The final element asks whether the same claim or cause of action was involved in both

actions. To make this determination, the Fifth Circuit uses a transactional test. Under that standard, the preclusive effect of the prior judgment extends to all rights the original plaintiff had "with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Petro-Hunt, 365 F.3d at 395-96, quoting Restatement (Second) of Judgments, § 24(1) (1982). What factual grouping constitutes a transaction, and what groupings constitute a series, are determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation. Id. §24(2). "[T]he critical issue is whether the two actions under consideration are based on the same nucleus of operative facts." Southmark, 163 F.3d at 934; Test Masters Educational Services, Inc. v. Singh, 428 F.3d 559, 571 (5th Cir. 2005).

The claims asserted in the 2008 and 2009 complaints are all based on the same events or series of connected events. They stem from a couple of alleged incidents of physical violence, an episode of mace being used, and medical care over the same course of time. Some more details are added in the 2009 complaint, but the allegations are part of a continuing narrative presented by Plaintiff in which he is falsely accused of suicide attempts in an effort by jail officials to cover up mistreatment, and he is not given proper medical care for his injuries and other problems stemming from those incidents. Any reasonable reader of the two suits would readily agree that the two actions are based on the same nucleus of operative facts. Accordingly, all elements of res judicata are present. Dismissal of this 2009 action is warranted.

**Duplicative Litigation**

A separate and distinct basis for dismissal comes from the court's discretion to dismiss a complaint that is duplicative litigation. Cambridge Toxicology Group, Inc. v. Exnicios, 495 F.3d 169, 178 (5th Cir. 2007). The court has authority to dismiss a suit that is duplicative of another federal court suit as part of its general power to administer its docket unless there are special circumstances that favor prioritizing the second suit. A suit is duplicative when the same proof is needed to support the claims in both suits or, in other words, the facts essential to the second suit were present in the first suit. Barclay v. Lowe, 131 Fed. Appx. 778 (2d Cir. 2005).

Both suits, which were open at the same time, allege that Bossier Parish sheriff deputies assaulted Plaintiff, subjected him to harsh conditions, sprayed him with mace, denied him adequate medical care, used racially derogatory remarks, and engaged in similar mistreatment. The incidents in this second suit, to the extent they differ from those in the first complaint, generally arose during the same time period and could have been presented to the court in the first suit. Some of the incidents occurred after the filing of the first complaint, but Plaintiff could have amended his complaint to include any related, exhausted claims against the Bossier Parish officials.

Plaintiff could and should have included in his first civil action all of his claims against the Bossier sheriff and his deputies related to the alleged uses of force, medical care matters, and conditions of confinement. It appears that Plaintiff perhaps recognized that his first complaint might not fare well in the face of the Motion for Summary Judgment the

defendants filed, so he tried to ensure the continuation of litigation activity by essentially refiling his complaint as this new civil action that added some additional facts and defendants.

Dismissal of a similar second suit was affirmed in Barclay when the two suits alleged that prison officials assaulted the plaintiff in retaliation for filing lawsuits, denied him medical care, and discriminated against him based on race. The Barclay plaintiff named different defendants in the second suit, but the suits were found nonetheless duplicative because all defendants in both suits were employees of the same prison. See also Digennaro v. Whitehair, 467 Fed. Appx. 42 (2d Cir. 2012) (affirming dismissal of duplicative suit despite addition of new defendant; all defendants were employees of the same municipality).

Plaintiff has abused the litigation process by filing these duplicative suits, and through his filing of lengthy, repetitive submissions within the cases. He has also filed in this court, in addition to the two cases at issue here, at least five other civil actions that have been dismissed as meritless. See McCoy v. Bossier Press Tribune, 11 CV 395; McCoy v. Halpman, 09 CV 1535; McCoy v. Bossier Maximum Security Facility, 09 CV 2112; McCoy v. Cox, 09 CV 1721; and McCoy v. Dean, 09 CV 2091. Plaintiff also filed a lengthy petition for writ of mandamus in the Fifth Circuit in an effort to require service of one of his meritless complaints before the district court concluded its initial review. In re Robert McCoy, 13-30047. The petition was dismissed for failure to comply with a notice from the clerk.

The court may dismiss a duplicative second civil action in a setting such as this. The similarities between the two suits, together with Plaintiff's pattern of abusive litigation,

warrant the court exercising its discretion to dismiss this second, duplicative complaint. It is time to end Plaintiff's litigation practice before this court.

**Exhaustion of Administrative Remedies**

Some of Plaintiff's claims in his 2009 complaint are related to the time and events at issue in the 2008 complaint, but they differ somewhat in the nature of the claims. For example, Plaintiff alleges that while he was held in segregation following the force incidents/suicide attempts, he was denied toiletries, toilet paper, warm clothing, bedding, and the like. He also complains about being housed in segregation, which he says was unnecessary given the absence of suicide attempts, the confiscation of legal papers, and lack of legal research resources.

Defendants argue in their motion that Plaintiff did not file an administrative remedy complaint regarding any of these matters. This lack of such a grievance gives rise to a defense under 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The statute requires Plaintiff to exhaust available administrative remedies in accordance with prison or jail procedures before filing a Section 1983 suit such as this. Woodford v. Ngo, 126 S.Ct. 2378 (2006).

Plaintiff did not specifically respond to this defense in his opposition. He has not pointed to anywhere in his voluminous filings where there is evidence of the proper and full exhaustion of an administrative grievance regarding the various matters listed above. He has,

therefore, not satisfied his summary judgment burden to overcome the defense. The lack of exhaustion provides an alternative basis for the dismissal of those claims.

Accordingly,

**IT IS RECOMMENDED** that Defendants' **Motion for Summary Judgment (Doc. 75)** be **granted** and that all claims against all Defendants be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

      THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of February, 2014.

_____
Mark L. Hornsby
U.S. Magistrate Judge